07-4567-cv
Leibowitz v. Cornell University


UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2008

(Argued: February 27, 2009        Decided: October 23, 2009)

Docket No. 07-4567-cv

————————

MARGARET SIPSER LEIBOWITZ,

*Plaintiff-Appellant*,

—v.—

CORNELL UNIVERSITY, NEW YORK STATE SCHOOL OF INDUSTRIAL AND LABOR RELATIONS,
EDWARD J. LAWLER, RONALD SEEBER, ANN W. MARTIN, ESTA R. BIGLER AND NICK
SALVATORE,

*Defendants-Appellees*.

————————

B e f o r e :

KEARSE and KATZMANN, *Circuit Judges*, and BIANCO, *District Judge*.[*]

————————

Plaintiff-Appellant appeals from an order entered October 12, 2007, in the United

_____

[*] The Honorable Joseph F. Bianco, United States District Judge for the Eastern District of
New York, sitting by designation.

States District Court for the Southern District of New York (Daniels, *J.*), granting

Defendants-Appellees' motion for summary judgment, pursuant to Rule 56(c) of the Federal

Rules of Civil Procedure. We find that material issues of disputed fact exist related to

plaintiff's discrimination claims pursued on this appeal and, therefore, vacate the district

court's order as to those claims. We affirm the district court's order granting summary

judgment on plaintiff's contract and quasi-contract claims.

—————————

DAVID M. MAREK, (Jeffrey L. Liddle on the brief) Liddle and
Robinson, LLP, New York, NY, *for Plaintiff-Appellant*.

WENDY E. TARLOW, (Nelson E. Roth, Valerie Cross Dorn and
Norma W. Schwab on the brief), Cornell University, Ithaca,
NY, *for Defendants-Appellees*.

—————————

BIANCO, *District Judge*:

Plaintiff Margaret Sipser Leibowitz appeals from so much of a final judgment entered

in the United States District Court for the Southern District of New York (George B. Daniels,

*Judge*), as dismissed her complaint against her employers, Cornell University ("Cornell" or

the "University") and the New York State School of Industrial and Labor Relations ("the ILR

School"), as well as the individually-named defendants, asserting (1) claims of gender and

age discrimination based upon the non-renewal of her employment contract, in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"),

the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, as amended (the

"ADEA"), as well as state and municipal laws, and (2) state claims for breach of contract,

2

breach of implied-in-fact contract, unjust enrichment, and quantum meruit. The district court granted summary judgment in favor of the defendants on the discrimination claims on the grounds that (a) plaintiff had failed to establish a prima facie case because she presented insufficient evidence to show that she suffered an adverse employment action when defendants refused to renew her contract, and there was insufficient evidence to give rise to an inference of discrimination, and (b) even if plaintiff established a prima facie case, defendants proffered a non-discriminatory reason for refusing to renew plaintiff's employment contract, and plaintiff had presented insufficient evidence to support a conclusion that the articulated reason was a pretext for discrimination. The district court also dismissed plaintiff's breach of contract claims on the ground that she failed to raise any issues of fact regarding whether she had an implicit guarantee of job security on par with tenured faculty members, as well as her claims of breach of implied-in-fact contract, quantum meruit, and unjust enrichment in connection with work she performed after she officially ended her employment with Cornell. On appeal, Leibowitz contends that summary judgment was improper because there were genuine issues of fact to be tried.

For the reasons that follow, we vacate the district court's grant of summary judgment on appellant's Title VII, ADEA, New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims and remand this case to the district court for further proceedings consistent with this opinion. The district court's grant of summary judgment on appellant's claims of breach of contract, breach of implied-in-fact contract, quantum meruit, and unjust enrichment is affirmed.

BACKGROUND

The following facts were taken from the record before the district court, construed in the light most favorable to plaintiff, the non-moving party. *See, e.g., Hotel Employees & Rest. Employees Union, Local 100 v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002).

A. Plaintiff's Employment at the ILR School

The ILR School is a "contract college" at Cornell, a statutorily-created partnership between the University and New York State, which offers a four-year undergraduate program in industrial and labor relations and receives state funding through the State University of New York ("SUNY") system. It has both a Resident Division, which teaches undergraduate and graduate courses at Cornell's Ithaca campus, and an Extension Division, which offers courses designed for working practitioners at regional offices in Buffalo, Albany, New York City, Rochester, and Long Island. In 1983, after receiving her undergraduate degree from the ILR School and her law degree from New York University, plaintiff began her employment with the ILR School as an Extension Associate in the Extension Division. In 1987, after successfully completing the Extension Division's "peer review process," she was promoted to the position of Senior Extension Associate II. Plaintiff's employment was a term appointment, in accordance with Cornell and ILR School written policy, which stated that senior extension associates may be appointed to "terms of up to five years and may be reappointed on the basis of recommendations by the department and the appropriate extension director and dean(s)." When plaintiff's employment contract was due to expire in October

1997, defendants assert that Associate Dean Ronald Seeber planned not to renew her appointment because of her strained relationship with the supervisor of the New York City office, Esta Bigler, but ultimately changed his mind because, first, plaintiff secured a project that permitted her to work away from the New York City office in the spring of 1998 and, second, the Resident Division needed teachers for particular courses in areas of plaintiff's expertise. Accordingly, plaintiff was reappointed for the term from February 1, 1998 to October 31, 2002. She then began teaching a full class schedule for the Resident Division, while also teaching and developing Extension programs and serving as a thesis advisor for undergraduate students. Between 2000 and 2003, plaintiff won various teaching accolades.

B. The Renewal Process

Cornell and ILR School policy stated that senior extension associates were appointed to five-year terms, renewable on the basis of department recommendations. Moreover, each of plaintiff's appointment letters in 1984, 1987, 1992, and 1998 explicitly indicated that the appointment was for a finite term and was contingent upon funding. Plaintiff acknowledges that the position of Senior Extension Associate II was not a tenured one. In fact, plaintiff sent an e-mail in 2000 to a friend in which she stated, "I'm just a lowly, untenured Extension person." However, plaintiff asserts that she held a position equivalent to that of a tenured professor and cites several pieces of evidence to support that assertion.

First, it is undisputed that, prior to the non-renewal of plaintiff's contract, defendants had never terminated, laid off, or failed to renew the contract of one holding the position of Senior Extension Associate II without cause.

5

Second, plaintiff points to the ILR Faculty Personnel Policies, which describe the process for "Reappointment and Promotion of Non-tenured Faculty Members," and plaintiff sets forth evidence that the enumerated process was not followed with respect to senior extension associates. Defendants note that the policy refers only to "assistant professors" (i.e., tenure-track professors) and does not reference senior extension associates and has no application to them.

Finally, plaintiff points to the belief by two senior extension associates that they had a position that was essentially equivalent to tenure, as well as statements by three other Cornell employees in which they stated they had heard or believed that senior extension associates had something similar to (but not) tenure, or that the review process was "pro forma."

As noted above, plaintiff was reappointed as a senior extension associate for the term from February 1, 1998 to October 31, 2002.

C. Plaintiff's Travel Expenses

While plaintiff was teaching at the Ithaca campus, she was based in the New York City metropolitan area, and Cornell reimbursed her travel costs. In 2001, Cornell's tax compliance office required the ILR School to categorize plaintiff's travel expenses as taxable income. Accordingly, to maintain plaintiff's salary at its then-current level, the ILR School had to pay plaintiff a gross amount exceeding that of her travel expenses in order to cover the added cost of personal income taxes incurred. In March 2001, Dean Edward J. Lawler informed plaintiff that the ILR School would pay her $20,000 towards her travel expenses. In December 2001, plaintiff informed Dean Lawler that this amount was insufficient to cover her

6

expenses and apologized for the delay in bringing it to his attention, noting that the events of September 11, 2001 had made it difficult for her to estimate her actual costs of travel for the fall semester. Dean Lawler initially denied her request, prompting plaintiff to write to him that she was "truly sorry for the misunderstanding about the travel money" but could not afford to cover her travel costs and wished to speak with him about her ability to meet her spring semester commitments. Dean Lawler then increased the amount of her travel allowance to $29,000. In January 2002, plaintiff thanked him for the "generous offer," but noted that the funds were still insufficient. Dean Lawler then increased the travel compensation to $30,000, but felt frustrated by plaintiff's repeated requests, interpreting them as "forceful," "demanding," and "pushy."

In June 2002, plaintiff again contacted the ILR School regarding travel reimbursement. Defendants submit that this overture reminded Dean Lawler that her contract was set to expire in October 2002, which led him to evaluate whether it was worth retaining her. However, a June 25, 2002 e-mail from Associate Dean Robert Smith to Dean Lawler and Associate Dean Ann Martin indicates the decision not to renew her contract had already been made; in detailing the June 2002 meeting he had with plaintiff to discuss her travel expenses, Associate Dean Smith wrote: "Other than my mention of budget problems, I did not offer any inklings of what is yet to come! Good luck on that one; will be a tough meeting, but will be a good investment." Regardless of the timing of the decision, defendants contend that Dean Lawler ultimately concluded that the "special arrangement" with plaintiff had become too expensive in light of "budgetary issues." Specifically, during the 2000-2002 period, the

7

SUNY system had reduced the percentage of its budget appropriated to the ILR School and, as a result, January 2002 expense projections for the Extension Division for the 2002-2003 academic year exceeded the expected amount of state funds. E-mails drafted by Associate Dean Martin and Associate Dean Smith in late 2001 and early 2002, respectively, indicate that the budget concerns in the Extension Division were pressing.

D. Plaintiff's Contract Is Not Renewed

Dean Lawler met with plaintiff on June 27, 2002 to inform her of his decision not to renew her contract and memorialized that meeting in a July 1, 2002 letter to her, stating:

> . . . I am writing to affirm what I discussed with you [on June 27], letting you know in advance that we are not in a position to renew your current employment contract, which expires on October 31, 2002. As you know, your job responsibilities have shifted from New York City to Ithaca. For the last several years, we have used your talents on a year-to-year basis to teach courses in our resident program in Ithaca, and there have been no duties for you to perform in the position in New York City for which you were hired. We appreciate your teaching skills, but with budgetary exigencies this year – and with the expectations of more budgetary pressures in the future – we cannot afford to continue your current terms of employment with the School.

The letter further stated that plaintiff would be formally assigned to Ithaca for the 2002-2003 academic year and her employment would extend to May 31, 2003, after which time the School was not "making any representation about future employment," nor

8

encouraging plaintiff "to move from New York to Ithaca with the expectation of future employment."

On November 4, 2002, Associate Dean Martin sent an e-mail to the entire Extension Division, stating that "Peggy Leibowitz was laid off." Martin later testified that "terminated would be a better term" to describe the non-renewal of plaintiff's contract. On December 9, 2002, plaintiff submitted a letter stating her intention to retire, effective December 30, 2002, to preserve her benefits. Plaintiff was fifty-one years old at the time that her employment with the ILR School came to an end.

E. Positions in the Long Island and New York City Offices

Dean Lawler testified that, prior to his decision not to renew plaintiff's contract, he did not investigate whether a position was available within the Extension Division that plaintiff could assume, nor did he ask anyone else to do so. However, following the decision regarding the non-renewal of plaintiff's contract in June 2002, the Long Island office expressed interest in having plaintiff work as a senior extension associate. In particular, in July 2002, Thomas Germano, the Director of the Long Island office, told Associate Dean Martin that he was "eager" to hire plaintiff to work as a senior extension associate in his office because she had good client contacts and could generate revenue for the ILR School. Germano's interest was communicated to Dean Lawler, but, according to Dean Martin, allowing plaintiff to work out of the Long Island office "was certainly not considered."

In October 2002, the ILR School informed employees in its Long Island District Office that, effective June 2003, that office would be closed and its employees reassigned to

9

the New York City District office. When Arthur Matthews, a younger male senior extension associate in the Long Island office, learned of the planned reassignment, he informed defendants that he would resign as of January 2003. On December 20, 2002, plaintiff wrote to Dean Lawler, requesting that he permit her to rescind her retirement and that she be assigned to a position in the Extension office in Long Island. Dean Lawler denied her request, citing "fiscal circumstances."

On December 24, 2002, Germano, the Director of the Long Island office, wrote to plaintiff, purporting to confirm his offer to her of the position vacated by Matthews effective January 20, 2003. Upon learning of the offer, Dean Lawler informed plaintiff that the offer was not valid, and he terminated Germano for making it. Plaintiff was not considered for any position at the Long Island office.

Nor was plaintiff considered for any vacancies in the New York City office. Defendants claim that they did not consider plaintiff for these vacancies because plaintiff had "burned some bridges in the New York City office," which included "bad blood" with supervisor Esta Bigler from an incident in 1997. Plaintiff, however, introduced evidence (including e-mails from 1999 and 2000) that suggests that plaintiff and Bigler had no lasting conflicts. Plaintiff also introduced evidence that defendants in 2002 planned to assign Arthur Matthews to the New York City office, despite his having had past conflicts with Bigler.

F. Other Employment Decisions

In the midst of the budgetary concerns that arose in late 2001, the Extension Division laid off six employees (all of whom were females over the age of fifty) between December

10

2001 and January 2003, and hired twelve employees (whose average age was thirty-three). Other than plaintiff, the five females who were fired were administrative assistants. Plaintiff's base salary (not including her travel expenses) exceeded that of the highest paid new hire. Two of the new employees, hired for the respective positions of Extension Support Specialist and Senior Extension Associate, were females. By the conclusion of the 2002-2003 academic year, the ILR School was in "solid financial shape" with both Resident and Extension budgets "in the black," which was due in part to cuts made in that academic year and those planned for the 2003-2004 academic year.

G.  Plaintiff's Continued Work as an Academic Advisor

After plaintiff's employment ended on December 30, 2002, the ILR School instructed the two students she had been advising to locate an alternate academic advisor. After the students protested, Associate Dean Martin determined, after consulting with Dean Lawler, that plaintiff could continue to chair the students' honor theses if all the parties consented to that arrangement. Plaintiff thus continued to serve as an academic advisor to the two students. In May 2003, she submitted an invoice to Dean Lawler for services performed, totaling $25,000, at a rate of approximately $2,000 per day. By letter dated May 21, 2003, Dean Lawler denied plaintiff's request for payment, stating that the ILR School did not offer financial compensation to an instructor for the activities that plaintiff had performed and that he would have informed her of the same before she undertook those activities had she asked at the time. Specifically, Dean Lawler explained: "[O]ur policy in ILR is to permit teachers who leave the University to continue their services on theses, if they wish and the student

11

agrees. We do not offer any financial compensation to an instructor for time spent on such activity, although we have generally paid travel expenses for an instructor to attend a student's defense." The ILR School did reimburse plaintiff's travel expenses pursuant to Dean Lawler's representation.

H.  Reassignment of Plaintiff's Duties

After plaintiff's employment concluded, plaintiff was not specifically replaced by any one individual at the ILR School. The ILR School tasked Lee Adler, a male senior extension associate, with teaching some of the Resident classes that plaintiff had formerly taught. However, unlike plaintiff, Adler was paid $7,500 for each Resident class taught in addition to his Extension salary. Ronald Applegate, another male faculty member, began a three-year appointment in August 2002 and was offered the option of performing work in the Extension Division that plaintiff had been performing prior to the conclusion of her employment. Finally, defendants used another male, Lance Compa, to perform some of the duties plaintiff had previously performed.

I.  The Present Action

On December 16, 2003, plaintiff filed a complaint in the Southern District of New York seeking damages and remedies under, to the extent pertinent to this appeal, Title VII, the ADEA, the NYSHRL, the NYCHRL, and New York State common law. On March 14, 2004, defendants filed a motion to dismiss the entirety of plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). By Order dated February 3, 2005, the district court granted defendants' motion. First, the district court found that

12

plaintiff had failed to establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as she had not demonstrated an adverse employment action or causation. Specifically, because Cornell's official policy did not provide job security on par with tenured professors to contracted associates, the district court concluded that the non-renewal of plaintiff's contract could not constitute an adverse act for purposes of the relevant anti-discrimination statutes. The district court also held that her breach of contract claim failed for the same reason. Finally, the district court held that plaintiff's implied-in-fact contract and quantum meruit claims were insufficient as a matter of law, as she failed to plead essential elements of both causes of action. *See Leibowitz v. Cornell Univ.*, No. 03-9976, 2005 WL 267560 (S.D.N.Y. Feb. 3, 2005) ("Leibowitz I").

Plaintiff appealed to this Court, which reversed in part the decision of the district court, reinstating plaintiff's discrimination and breach of contract claims and ordering that she be granted leave to replead her implied-in-fact contract and quantum meruit claims. *See Leibowitz v. Cornell Univ.*, 445 F.3d 586 (2d Cir. 2006) ("Leibowitz II"). With respect to plaintiff's discrimination claims, this Court determined that the district court erred by applying the prima facie case requirement at the pleading stage, as "'[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement.'" *Id.* at 591 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (omission in original)). Thus, this Court concluded that plaintiff's claim that the non-renewal of her contract breached an unofficial promise of job security on par with tenure was a sufficient allegation of an adverse employment action to survive a motion to dismiss under Rule 12(b)(6), and that this

13

allegation was also sufficient to plead a cause of action for breach of contract. Finally, the district court was instructed to grant plaintiff leave to amend her claims of implied-in-fact contract and quantum meruit.

This matter returned to the district court and discovery was conducted, after which defendants moved for summary judgment on all claims. The district court granted the motion in its entirety. *See Leibowitz v. Cornell Univ.*, No. 03-9976, 2007 WL 3019223 (S.D.N.Y. Oct. 12, 2007) ("Leibowitz III"). The district court determined that plaintiff had failed to establish a prima facie case of discrimination because she was "unable to produce any evidence that she had or held any right to a tenured position, that any Senior Extension Associate II had tenure, or that Senior Extension Associates who were male or younger than plaintiff were unofficially given tenure," *id*. at *5, and, therefore, plaintiff could not prove the existence of an adverse employment action in the defendants' decision not to renew her contract, nor could plaintiff show circumstances giving rise to an inference of discrimination. *See id*. at *5-9. The district court also concluded that plaintiff failed to raise a genuine issue of material fact that defendants' purported reasons for failing to renew her contract were pretextual. *See id*. at *9. The district court further concluded that, because plaintiff could not establish an unofficial policy granting her tenure, her breach of contract claim failed. *Id*. at *11. Finally, the district court found that plaintiff's implied-in-fact contractual claim, related to services she rendered after her employment ended, failed because she could not demonstrate that defendants consented to pay her for those services, and that her claim of quantum meruit also failed because she could not establish a reasonable expectation of

14

compensation.  *Id*. at *11-12.

This appeal followed.

**DISCUSSION**

We review a district court's grant of summary judgment *de novo*.  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue" of fact exists for summary judgment purposes where the evidence is such that a reasonable jury could decide that fact in the non-movant's favor.  *See Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007).  In reviewing a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Plaintiff now asserts four arguments on appeal.  First, she argues that the district court erred in concluding that she had not established a prima facie case of gender and age discrimination.  Second, she contends that she raised genuine issues of disputed fact as to whether defendants' proffered reason for opting not to renew her contract was pretextual.  Third, she asserts that the district court overlooked triable issues of fact regarding whether defendants guaranteed her job security on par with tenured faculty members as related to both her discrimination and contractual claims.  Finally, plaintiff argues that the district court erred

15

in dismissing her claims for quantum meruit and unjust enrichment. We consider each argument in turn.

A. Plaintiff's Discrimination Claims

The same evidentiary framework is used to evaluate claims of discrimination based upon gender or age.[1] *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001). To establish a prima facie case of age discrimination under the ADEA or gender discrimination under Title VII, a plaintiff must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.[2] *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (citing *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (ADEA), and *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (Title VII)).

Once a plaintiff has established a prima facie case of age or gender discrimination, the

---

[1] Age discrimination claims brought pursuant to the NYSHRL and the NYCHRL are analyzed under the ADEA framework, *see Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 114 n.3 (2d Cir. 2007), just as gender discrimination claims brought pursuant to the NYSHRL, and the NYCHRL are analyzed under the Title VII framework, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000).

[2] The Court notes that, pursuant to the Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2350-51 (2009), a claimant bringing suit under the ADEA must demonstrate that age was not just a motivating factor behind the adverse action, but rather the "but-for" cause of it. *See id.* Title VII, on the other hand, does authorize a "mixed motive" discrimination claim. *See id.* at 2350 n.3 ("Congress amended Title VII to allow for employer liability when discrimination was a *motivating factor* for any employment practice, even though other factors also motivated the practice, but did not similarly amend the ADEA. We must give effect to Congress' choice.") (internal quotations and citations omitted).

16

burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' [adverse act]." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)) (Title VII); *see, e.g., D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (ADEA). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). However, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

1. Adverse Employment Action

Plaintiff first challenges the district court's determination that the non-renewal of her contract did not constitute an adverse employment action as a matter of law. An adverse employment action, for purposes of both the ADEA and Title VII, is "'more disruptive than a mere inconvenience or an alteration of job responsibilities'" and can include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)) (omission in original).

The district court, in its Rule 12(b)(6) dismissal of plaintiff's discrimination claims,

17

determined that despite plaintiff's allegation that "pursuant to the policies of Cornell University and the ILR School, a Senior Extension Associate II, such as herself, is a tenure faculty member," the official policies actually stated that the position she held was a term appointment, and "[d]efendants did not terminate plaintiff's employment," but "[r]ather, they chose not to renew her appointment for another five-year term" and, thus, there was no adverse action as a matter of law. *Leibowitz I*, 2005 WL 267560, at \*5-6. We reversed that determination and held that plaintiff's allegations were sufficient to withstand a Rule 12(b)(6) motion to dismiss in that she alleged an unofficial policy of lifetime employment that was denied her based upon her gender and age. *Leibowitz II*, 445 F.3d at 592.

After discovery was conducted, the district court reviewed the evidence and concluded that there was no adverse employment action as a matter of law because "plaintiff is unable to make the requisite showing that Cornell had an unofficial policy of granting tenure to its contract Senior Extension Associate II employees or did so for any male or younger Senior Associate II employees." *Leibowitz III*, 2007 WL 3019223, at \*7. Thus, the district court held that "[p]laintiff did not have a guarantee of lifetime employment, and therefore suffered no material adverse change in the terms of her employment when she was advised that she would not be rehired in the future when her five-year contract expired." *Id.* For the reasons set forth below, we hold that in the circumstances here a non-renewal of an employment contract itself is an adverse employment action and the district court erred in requiring plaintiff to show the existence of an unofficial tenured position to satisfy the adverse action requirement.

18

Defendants argue that, pursuant to our earlier decision in this matter, plaintiff could only sustain her burden of demonstrating adverse action by offering documentation supporting her allegation that she held a tenured position, because non-renewal of her contract alone would not suffice. Such is not the case. As a threshold matter, although our earlier opinion suggested that plaintiff was alleging more than non-renewal and that the denial of a position equivalent to tenure would constitute an adverse action, we did not foreclose the possibility that the non-renewal of an employment contract alone could constitute an adverse action. Indeed, we are persuaded that, where renewal is sought, it does.

It is beyond cavil that employers subject to the strictures of the ADEA and Title VII may not discriminate on the basis of age or gender in deciding whether or not to hire prospective employees. *See* 29 U.S.C. § 623(a)(1) (it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's age"); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (refusal to hire constitutes an adverse act under Title VII); *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir. 1996) ("Title VII is an *employment* law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers.") (citations and internal quotation marks omitted). Were we to accept defendants' argument here, we would effectively rule that *current* employees seeking a renewal of an employment contract are not entitled to the same statutory protections under the discrimination laws as *prospective* employees. In other words, under defendants' reasoning, an employee could bring a discrimination lawsuit if an employer refused to hire her based on her age and/or gender, but

19

not if the same employer failed to renew an employment contract for the same discriminatory reasons. We decline to adopt that flawed legal analysis, which is inconsistent with prior decisions of the Supreme Court and this Court. For example, in *Tarshis v. Riese Organization*, 211 F.3d 30, 38 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz,* 534 U.S. 506, we held that "[t]he discharge of an employee, followed by her rehiring in a lower position, is an adverse employment action." We further explained that "[w]e see no reason why an employer should be allowed to accomplish an adverse reassignment or demotion with invidious intent through layoff and rehiring when that same action would be impermissible if done in the course of employment." *Id.* Similarly, in the landmark case of *McDonnell Douglas Corp. v. Green*, although not specifically addressed by the Supreme Court, the adverse action at issue under Title VII, which the Court allowed to proceed, involved a refusal to rehire the plaintiff, who had been laid off several months earlier in the course of the employer's general reduction in workforce.[3] 411 U.S. at 794-96. There is simply no reason that the discrimination laws should not apply with equal force to an employer's decision regarding a current employee who is denied a renewal of an employment contract. An employee seeking a renewal of an employment contract, just like a new

___

[3] In addition, the Supreme Court has made clear in other contexts that the lack of right to re-employment by contract or tenure does not preclude an employee from claiming that her constitutional rights have been infringed by an employer's refusal to rehire. *See, e.g.*, *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990) (rejecting argument that First Amendment rights of public employees had not been infringed because they had no legal entitlement to continued employment); *Perry v. Sindermann*, 408 U.S. 593, 597-98 (1972) (a teacher's lack of a contractual or tenure right to re-employment "is immaterial to his free speech claim"). The reasoning of those decisions is also instructive in the discrimination context for purposes of this issue.

applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA. The mere fact that the employer's decision not to renew is completely discretionary does not mean that it is not an "adverse" employment decision.

Accordingly, we hold that where an employee seeks renewal of an employment contract, non-renewal of an employment contract constitutes an adverse employment action for purposes of Title VII and the ADEA. Although the parties focus on the terminology used with respect to the plaintiff, whether plaintiff was "laid off" or "terminated," or her employment was "not renewed" is not critical to the legal analysis; rather, she suffered an adverse employment action because she was denied the requested continued employment, regardless of the label.

We note that, in reaching this decision, we join other circuit courts that have, either implicitly or explicitly, held that non-renewal of a contract may constitute an adverse employment action for purposes of the discrimination laws. *See, e.g.*, *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII . . . ."); *Carter v. Univ. of Toledo*, 349 F.3d 269, 270-71 (6th Cir. 2003) (reversing district court's grant of summary judgment in employer's favor on plaintiff's race discrimination claim under Title VII in connection with employer's failure to

21

renew her contract as a visiting professor); *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1279-82 (10th Cir. 2003) (sufficient evidence existed for jury to reasonably conclude that employer unlawfully discriminated against employee based on age under the ADEA in deciding not to renew his contract); *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 625 (7th Cir. 2002) (noting, where teacher claimed non-renewal of contract was discriminatory under Title VII, that "[i]t is undisputed . . . that [plaintiff] suffered an adverse employment action"); *Kassaye v. Bryant Coll.*, 999 F.2d 603, 607 (1st Cir. 1993) (noting that "act of refusing to renew appellant's employment at Bryant College" may provide grounds for discrimination claim).[4]

In sum, the district court erred in concluding that the non-renewal of plaintiff's employment contract was not an adverse employment action.

---

[4] Moreover, a number of district courts have reached the same conclusion. *See, e.g.*, *Ghent v. Moore*, 519 F. Supp. 2d 328, 336 (W.D.N.Y. 2007) ("In general, the non-renewal of an employment contract satisfies the adverse-action requirement for purposes of a plaintiff's prima facie case."); *Hernandez-Mejias v. Gen. Elec.*, 428 F. Supp. 2d 4, 8 (D.P.R. 2005) ("As even at-will employees and job applicants are entitled to Title VII protection, we agree with the overwhelming majority of courts that non-renewal of an employment contract constitutes an adverse employment action." (citations omitted)); *Sloat v. Rapid City Area Sch. Dist. No. 51-4*, 393 F. Supp. 2d 922, 930 (D.S.D. 2005) (non-renewal of teacher's contract satisfied prima facie requirement of adverse employment action for purposes of ADEA); *Kabes v. Sch. Dist. of River Falls*, 387 F. Supp. 2d 955, 975 (W.D. Wis. 2005) ("Defendants' nonrenewal of plaintiff[]'s contract constitutes an adverse employment action."); *Walker v. Bd. of Regents of Univ. of Wis. Sys.*, 300 F. Supp. 2d 836, 852-53 (W.D. Wis. 2004) ("Defendants declined to renew plaintiff's employment contract after six years. Whether this action is considered a termination or a refusal to re-hire, I conclude that it is a cognizable injury for the purpose of § 1981, § 1983 and Title VII . . . . If the reason defendants did not renew plaintiff's contract was her race or sex, they violated the law.").

2.  Inference of Discrimination

Plaintiff next argues that the district court erred in its determination that the circumstances surrounding the non-renewal of her contract did not give rise to an inference of age or gender discrimination.  Viewing the facts presented in the light most favorable to plaintiff and drawing all reasonable inferences therefrom, we agree.

It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal citations omitted); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) (partial transfer of plaintiff's duties to younger employee on termination and transfer of remaining duties to younger employee hired after termination would permit inference of discrimination); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (inference of discrimination would be permissible where employer, during company reorganization, found new positions for younger, but not older, employees); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 113 (2d Cir. 1992) (decision to terminate two of three older employees and none of the twenty younger employees would permit inference of discrimination).

Here, plaintiff has presented evidence of the following: (1) during the relevant time period, in addition to plaintiff, defendants laid off five other employees, all of whom were females over the age of fifty;[5] (2) defendants reassigned teaching duties once performed by plaintiff to at least three male instructors; and (3) defendants did not consider plaintiff for vacant positions that arose in 2002, prior to plaintiff's departure, in the Long Island and New York City offices, and attempted to fill one such position in the New York City office with a younger, male employee.

The district court determined that no inference of discrimination could be drawn from these actions because none of the male employees cited specifically replaced her, and because none were granted "unofficial tenure." However, plaintiff is not required to establish that she was replaced by a single male and/or younger employee in order to carry her burden. *See Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989) ("[I]n a reduction-in-force case or a structural reorganization case, a discharged employee who seeks under *McDonnell Douglas* to establish a prima facie case, need not show that he was replaced by a younger, newly hired employee; it is sufficient that the discharge occur in circumstances giving rise to an inference of age discrimination."). Instead, our prior cases

_____

[5] While the district court correctly noted that there was evidence that two of the new hires appointed to positions at the ILR School during this period were female, our precedent is clear that "although certain courts . . . have required an employee, in making out a *prima facie* case, to demonstrate that she was replaced by a person outside the protected class, we believe such a standard is inappropriate and at odds with the policies underlying Title VII." *Meiri v. Dacon*, 759 F.2d 989, 995-96 (2d Cir. 1985) (citations omitted). Accordingly, the fact that the ILR School also hired females as well as males during the "budgetary crisis" does not preclude an inference of gender discrimination.

24

have made clear that a variety of circumstances can give rise to an inference of discrimination, including those outlined above. Where, as here, the six layoffs, including plaintiff, were women at least 50 years of age, plaintiff's duties were primarily re-assigned to male instructors, and plaintiff was not considered for any vacant positions, plaintiff satisfies the minimal prima facie requirement of demonstrating that the non-renewal occurred under circumstances giving rise to an inference of discrimination. *See, e.g.*, *Carlton*, 202 F.3d at 135 (finding sufficient evidence of age discrimination for prima facie case where 57-year old plaintiff was terminated and his duties re-assigned to substantially younger employees); *Montana*, 869 F.2d at 105 (evidence of age discrimination sufficient for purposes of prima facie case where 56-year old plaintiff was terminated and majority of responsibilities were transferred to 26-year old employees); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716-17 (2d Cir. 1994) (inference of age discrimination permissible for purposes of prima facie case where plaintiff was replaced by a new, younger employee within one year of his termination).

Accordingly, the district court erred in concluding that plaintiff did not meet her burden of establishing a prima facie case of age and gender discrimination.

3. Pretext

The district court granted defendants' summary judgment motion on the alternative ground that defendants had proffered a legitimate, non-discriminatory reason for the non-renewal, and plaintiff had failed to provide evidence sufficient for a rational jury to find that the reason was pretextual. However, we conclude that, based upon the evidence discussed

25

above in connection with the prima facie case, combined with the additional evidence of pretext summarized below, plaintiff has created material issues of disputed fact on this issue sufficient to survive summary judgment.

Once the plaintiff properly establishes a prima facie case of age and gender discrimination, the court must evaluate whether defendants sufficiently met their burden under *McDonnell Douglas* of "articulat[ing] some legitimate, non discriminatory reason" for their actions. 411 U.S. at 802. Defendants have argued that they opted not to renew plaintiff's contract because of budgetary concerns; they submit that anticipated budget cuts and the expense of maintaining her travel allowance motivated them to terminate plaintiff's position at the ILR School.[6] In support of this argument, defendants presented evidence of the following: (1) budget projections for the ILR School anticipated a decrease in state funding for the academic year during which plaintiff's contract expired; (2) ILR School officials were aware of these potential financial difficulties and duly concerned about them;

_____

[6] Plaintiff argues that "Defendants' proffered reasons for terminating Plaintiff's employment have changed over time" and "[s]uch changes support the inference that Defendants' explanations are pretextual." (Plaintiff's Brief on Appeal, at 57.) Specifically, plaintiff submits that defendants have argued, at various stages in the litigation, that they did not renew plaintiff's contract because (1) it was a "good investment," (2) budgetary exigencies required it, and (3) she asked for more travel compensation than they were willing to provide. Although these justifications are not identical, all relate to the alleged financial burden of renewing plaintiff's contract; in contrast, in the cases where we have found that variations in the employers' professed reasons gave rise to an inference of pretext, those reasons were radically different. *See, e.g.*, *Carlton*, 202 F.3d at 137 (employer first cited declining profit as the motivation for claimant's dismissal, then in litigation relied upon claimant's poor job performance); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (employer stated during agency investigation that employee's discharge was due to decrease of duties assigned to his position, but then stated at trial that employee's qualifications were found lacking). Thus, pretext is not inferable from a shifting of rationales here.

26

and (3) the "uniquely expensive" arrangement plaintiff had with the ILR School regarding payment of her travel expenses influenced the ILR School's decision not to renew her contract. Defendants' proffered justification for ending plaintiff's employment is a legitimate one and, therefore, the burden shifts back to plaintiff to demonstrate that this reason is mere pretext for unlawful discriminatory intent. *See D'Cunha*, 479 F.3d at 196. In such situations, plaintiff carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus. *See Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000) (where the "defendants have articulated legitimate, nondiscriminatory reasons for having fired plaintiff, the burden shifts back to plaintiff to present sufficient evidence for a reasonable jury to conclude that defendants discriminated against him") (internal quotation marks and brackets omitted)); *see also Gross*, 129 S.Ct. at 2350-51 (claimant bringing suit under ADEA must demonstrate that age was "but-for" cause of adverse action); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion."). To carry this burden, the plaintiff may rely on the evidence presented to establish her prima facie case, without more. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79 (2d Cir. 2001); *Cronin*, 46 F.3d at 203.

It is axiomatic that "even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." *Maresco*, 964

27

F.2d at 111 (internal quotations omitted). Plaintiff presented evidence before the district court from which it could be inferred that the budgetary concerns cited by defendants were a pretext for discrimination. First, plaintiff presented evidence that the budgetary concerns in early 2002 diminished over the 2002-2003 school year and by July 2003 the ILR School Extension Division was "in solid financial shape" with a budget "in the black." Further, the ILR School Extension Division had the funding necessary to hire twelve new employees during the relevant time period. Although the Extension Division also laid off six employees during that time, plaintiff notes that all six were females over the age of fifty. Second, plaintiff submitted evidence that, although her requests for additional travel funds were cited as a factor in the decision not to renew her contract, it was a common practice amongst male Extension Division faculty members to negotiate for compensation as she did, and that none of these employees' contracts were terminated or not renewed. Plaintiff submits that, if her requests were so onerous that granting them made her continued employment unsustainable, defendants were free to simply deny them. Third, plaintiff pointed to evidence that she was not considered for any vacant positions before or after her non-renewal, despite the availability of such positions. In particular, there is undisputed evidence that the Director of the Long Island office wanted to hire plaintiff to work as a senior extension associate, offered her the position, and was fired for doing so. Although Dean Lawler stated that he withdrew the offer on the basis that it was unauthorized and the fiscal circumstances did not permit it, there are disputed issues of fact as to the actual employment needs of the Long Island office at that time. Similarly, a thirty-eight year old male was hired to fill a vacant senior extension

28

associate position in the New York City office in July 2002. In addition, Matthews was going to be transferred to the New York City office in June 2003, but chose to resign, and plaintiff was not considered for that New York City office position. Although defendants cite to evidence that plaintiff had conflicts with personnel in the New York City office, there are material issues of disputed fact regarding whether such conflict continued to exist in 2002 and, if it did, whether that conflict was a genuine reason given that similar past conflicts did not deter defendants from planning to place a male employee in that office.

Based on this evidence, we find that plaintiff has raised genuine issues of material fact regarding discriminatory pretext adequate to defeat summary judgment. Viewing the evidence in the light most favorable to plaintiff, a rational finder of fact could conclude that the budgetary exigencies cited by defendants were not so dire as to warrant her non-renewal, since the Extension Department both balanced its budget and had the funds necessary to bring in twelve new hires around the time that plaintiff's contract was not renewed. The fact that the six individuals laid off were females over the age of fifty could lend support to plaintiff's argument that her age and gender were the real reasons behind the non-renewal of her contract, especially in light of the evidence that she was not considered for other vacancies that arose in 2002. *See, e.g.*, *Demoret v. Zegarelli*, 451 F.3d 140, 152 (2d Cir. 2006) (reasonable jury could conclude that cited reason for adverse action taken against female administrative assistant – "budget concerns" – was pretextual in light of evidence that male department heads received raises during the relevant time period); *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 880 (2d Cir. 1997) (reasonable jury could find pretext

29

for age discrimination where, despite stated budgetary crisis, employer recalled and rehired certain employees, refused to consider claimant for new positions for which she was qualified and increased the number of employees who earned as much as claimant by twelve, all of whom were younger than claimant); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1226-27 (2d Cir. 1994) (reasonable jury could find reduction-in-force was a pretext for age discrimination where, among other things, there was evidence that employer failed to consider plaintiff for other vacant positions prior to discharge, in violation of company policy); *Montana*, 869 F.2d at 105-06 (question of fact regarding pretext for age discrimination existed in reduction-in-force case where plaintiff was discharged while the number of employees actually increased, she was not offered opportunity to transfer to new position, her duties were reassigned to a younger employee, and her employer failed to consider her for new position).

On the basis of this record, we therefore decline to uphold the district court's ruling that no rational finder of fact could decide that defendants' proffered reasons for opting not to renew plaintiff's contract were pretextual ones intended to mask unlawful discriminatory intent. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004) ("[U]nless the defendants' proffered nondiscriminatory reason is 'dispositive and forecloses any issue of material fact,' summary judgment is inappropriate." (quoting *Carlton*, 202 F.3d at 135)). Accordingly, we vacate the district court's judgment in defendants' favor as to all of plaintiff's discrimination claims under Title VII, the ADEA and state law, and remand for proceedings consistent with this opinion.

30

B. Plaintiff's Contract and Quasi-Contract Claims

Plaintiff next argues that the district court erred by dismissing her breach of contract and breach of implied contract claims, premised on the allegation that the ILR School had an unofficial policy granting senior extension associates job security on par with that of tenured faculty that it violated by failing to renew her contract. She also contends that the district court improperly dismissed her claims for quantum meruit and unjust enrichment arising from work she performed as an academic advisor after her term of employment ended. For the reasons set forth below, we affirm the judgment of the district court dismissing all contractual and quasi-contractual claims, as plaintiff failed to raise any genuine issues of material fact on critical elements of those aforementioned causes of action.

1. Claims Regarding Alleged Unofficial Tenured Position

In reversing the district court's initial dismissal of plaintiff's breach of contract claims, we determined that plaintiff properly pled a breach of contract claim by alleging that an unofficial Cornell policy granting lifetime employment to senior extension associates created a contractual relationship between the parties that Cornell breached in failing to renew her contract. As a threshold matter, it is unclear whether plaintiff appeals the district court's dismissal of both her breach of contract claim and her implied-in-fact contract claim arising from this alleged unofficial policy, or simply the latter cause of action.[7] However, as plaintiff

---

[7] Plaintiff argues that the testimony of Esta Bigler "creates a triable issue of fact that Defendants promised Plaintiff – and all other Senior Extension Associates – by their *words* and conduct that they had job security on par with tenured faculty," thereby suggesting that an express oral contract existed. (Plaintiff's Reply Brief on Appeal, at 31 (emphasis added).) However, the referenced testimony simply relates to Bigler's understanding of her own

31

has failed to produce any evidence substantiating the existence of an express contract, be it oral or written, guaranteeing her lifetime job security, the Court affirms the dismissal of her breach of contract claim. Thus, we turn to plaintiff's implied-in-fact contract claim.

Under New York law, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Jemzura v. Jemzura*, 330 N.E.2d 414, 420 (N.Y. 1975) (internal citations omitted); *see, e.g.*, *Parsa v. State*, 474 N.E.2d 235, 237 (N.Y. 1984) (an implied-in-fact contract "rests upon the conduct of the parties and not their verbal or written words"). A contract implied in fact is as binding as one that is express, and similarly "requires such elements as consideration, mutual assent, legal capacity and legal subject matter." *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999). However, "[i]t is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie." *Stissi v. Interstate & Ocean Transp. Co. of Phila.*, 814 F.2d 848, 851 (2d Cir. 1987); *see Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("A 'quasi contract' only applies in the absence of an express agreement . . . ."). As defendants have correctly noted, plaintiff's employment was governed by a series of appointment letters stating the definite term of her appointment. Although plaintiff argues that the letters do not

_____

employment situation with the University and has no bearing on whether *plaintiff* and the University had orally agreed to the arrangement alleged. Therefore, Bigler's testimony is insufficient to create a genuine issue of material fact regarding an express oral contract between plaintiff and defendants granting her lifetime job security.

constitute express contracts because they do not bear her signature and are "contingent upon funding," we disagree. "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (internal quotations omitted). Plaintiff seems to suggest that the absence of her signature on the letter indicates that she did not assent to be bound by the terms contained therein. However, "[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or *conduct* which evinces the intention of the parties to contract." *Maffea v. Ippolito*, 668 N.Y.S.2d 653, 654 (App. Div. 1998) (emphasis added) (citing 22 N.Y. Jur. 2d, Contracts, § 29). A party's conduct indicates assent when "he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." Restatement (Second) of Contracts § 19(2) (1981). It is undisputed that plaintiff performed teaching services pursuant to the terms of the letter appointments, indicating her assent to be bound by them. Her signature is not required to demonstrate assent. Likewise, the budgetary contingency provision does not render the agreement invalid. Therefore, plaintiff's action for quasi-contract related to allegations of "unofficial tenure" must fail, in the face of valid agreements governing the same subject matter.

Although we noted in our prior decision that this claim survived a motion to dismiss because plaintiff had alleged that documentation supported the existence of this unofficial lifetime appointment, or the equivalent of being a tenured professor, plaintiff has found no such documentation after full discovery to support such an allegation and contradict the

33

express terms of the appointment letters and Cornell policy. It is undisputed that plaintiff has not put forth any written policy that conferred tenure or the equivalent of tenure for senior extension associates; in fact, the policy states precisely the contrary.

Instead, plaintiff attempts to create an issue of material fact by pointing to the defendants' purported failure to follow the process in the ILR Faculty Personnel Policies for "Reappointment and Promotion of Non-tenured Faculty Members." However, we find this evidence and argument unavailing. As an initial matter, the policy refers only to "assistant professors" (i.e., tenure-track professors) and does not reference senior extension associates and, thus, does not explicitly apply to them. In any event, the mere fact that reappointment procedures were not always followed or that reappointments were often "pro forma" does not support a reasonable inference that Cornell was abandoning its policy and agreements that explicitly referenced a five-year term and, instead, bestowing lifetime guarantees of employment on its non-tenured, term employees. Moreover, the hearsay statements or rumors on this issue recounted in discovery by certain Cornell employees are insufficient to undermine the explicit terms of plaintiff's appointment letters and Cornell policy. The lack of sufficient evidence to create a material issue of fact on this point is perhaps best illustrated by plaintiff's own statements and conduct. Specifically, in an e-mail to a friend in 2000, plaintiff referred to herself as "just a lowly, untenured Extension person." Moreover, she asked unsuccessfully to be placed on the tenure track in 1990 and again in 1993.

In sum, we find that the district court correctly determined that the terms of her reappointment letter and Cornell policy both explicitly indicated that her contract term was

34

for five years, and plaintiff failed to produce sufficient evidence from which a reasonable jury could conclude, notwithstanding those explicit terms, the existence of an unofficial tenure policy for senior extension associates. Accordingly, we affirm the district court's grant of summary judgment in defendants' favor on the contractual claims related to the alleged unofficial tenured position.

2. Claims Regarding Post-Employment Services

The district court also dismissed on summary judgment plaintiff's claims related to work she performed with students after she ended her employment with Cornell in December 2002. Specifically, plaintiff argued that she was entitled to compensation for her continued involvement as a Senior Honor Theses advisor to two students in the spring of 2003. As set forth below, we agree with the district court that these claims are properly subject to dismissal on summary judgment.

As stated above, an implied-in-fact contract "requires such elements as consideration, mutual assent, legal capacity and legal subject matter." *Maas*, 721 N.E.2d at 970. In our prior decision, we concluded that plaintiff had failed to plead properly any mutual assent between the parties that she would be compensated for work performed after her term of employment. However, we instructed the district court to grant her leave to replead. *See Leibowitz II*, 445 F.3d at 593. Plaintiff amended the claim and discovery was conducted, after which the district court determined that she had failed to provide any "evidence of mutual assent that Cornell agreed to pay her for her services after her retirement." *Leibowitz III*, 2007 WL 3019223, at *11. Specifically, the Court noted that "Defendants did not consent to

35

paying plaintiff additional compensation after she retired; plaintiff already had a pre-existing duty to perform and complete the terms of her contract." *Id*. (citation omitted). We agree.[8] There is no evidence that plaintiff sought permission to charge for academic advisory services performed after her employment had concluded, or that any representative of the University intended to compensate her for them. Accordingly, in the absence of any proof of mutual assent, plaintiff's implied-in-fact contractual claim for the performance of these services must fail.

Plaintiff also appeals the district court's dismissal of her quasi-contractual claims,[9] based on the same nexus of facts.[10] "In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175 (quoting *Revson v. Cinque & Cinque, P.C.*, 221

---

[8] In her brief on appeal, plaintiff appears to appeal the dismissal of her implied-in-fact contractual claim only as it relates to allegations of lifetime job security. However, to the extent that her challenge is not so limited, we review the dismissal of that claim as it relates to work performed after her employment ended, as well, and affirm the decision of the district court for reasons stated *infra*.

[9] Plaintiff's claims of quantum meruit and unjust enrichment were both dismissed, and "[a]pplying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996)).

[10] It should be noted that plaintiff may only assert a claim of quantum meruit in the absence of an agreement between the parties, be it oral, written or implied-in-fact. *See, e.g.*, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (citing *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)).

F.3d 59, 69 (2d Cir. 2000)); *see also Beth Israel Med. Ctr.*, 448 F.3d at 586. A claimant

seeking relief under a theory of unjust enrichment in New York must demonstrate "(1) that

the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good

conscience require restitution." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir.

2002) (internal quotations omitted).

As with plaintiff's implied-in-fact contractual claim, we previously instructed the

district court to grant her leave to replead this claim, as she had "failed to allege any basis for

a finding that, in the absence of contract, Cornell should be required to pay for her work as a

matter of equity." *Leibowitz II*, 445 F.3d at 593. The district court dismissed this claim on

summary judgment because plaintiff did not establish a reasonable expectation of

compensation or specify the reasonable value of services provided. *Leibowitz III*, 2007 WL

3019223, at *12. Specifically, the Court noted the following: (1) plaintiff was not asked to

perform the services rendered, but rather volunteered them, (2) ILR School policy was clear

that teachers who were no longer employed by the University could provide advisory services

on a voluntary basis only, and (3) plaintiff's $25,000 bill (which annualized to a rate of

$500,000 per year) was "grossly disproportionate to any actual value of the services

rendered," particularly in comparison to her annual salary of $110,000, which included

approximately $30,000 in gross travel expense reimbursement. *Id*.

The Court agrees with this analysis; as stated above, plaintiff has offered no evidence

that she expressed an expectation of compensation prior to the performance of the services or

that anyone at the University indicated she would receive it. To that end, she has failed to

37

establish that the rate she charged represented a reasonable value of her services, particularly when compared to the salary she received when employed by the University. Further, in the absence of any proof that plaintiff had a reasonable basis for believing she would receive compensation, and in the amount specified by the invoice submitted to Dean Lawler, it cannot be said that principles of equity require any restitution. Accordingly, we affirm the district court's dismissal of plaintiff's quasi-contractual claims.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED insofar as it dismissed plaintiff's discrimination claims under Title VII, the ADEA and state law. The grant of summary judgment in defendants' favor on the remainder of plaintiff's claims is AFFIRMED. The matter is remanded to the district court for further proceedings consistent with this opinion.