**Antonio JENKINS, Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant–Appellee.**

No. 02–7479.

United States Court of Appeals, Second Circuit.

April 28, 2003.

Antonio Jenkins, for Plaintiff–Appellant, pro se.

Scott Shorr, Senior Counsel, The City of New York Law Department, for Defendant–Appellee.

Present: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE

OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the United States Courthouse, Foley Square, in the City of New York, on the 28th day of April, two thousand and three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

Antonio Jenkins ("Plaintiff–Appellant") is an African–American teacher who worked at P.S. 76 between 1991 and 1993. During the 1991–92 school year, Plaintiff–Appellant was a long-term substitute teacher and received a "satisfactory" evaluation. Accordingly, Plaintiff–Appellant was hired as a permanent teacher for the 1992–93 school year.

Plaintiff–Appellant alleges that he was subject to disparate treatment based upon his race and gender during his tenure at P.S. 76, and he requested a transfer to another school as a music teacher. On April 2, 1993, Plaintiff–Appellant complained to the principal, Barbara Ghyll, who is African–American, about the placement of a critical letter in his file and the disproportionate number of "problem" students in his class. Three days later, Ghyll gave Plaintiff–Appellant a memo stating that his classroom management skills were "unacceptable," and Plaintiff–Appellant filed a letter on April 14, 1993 outlining his grievances with that evaluation. In particular, Plaintiff–Appellant complained that he had been subject to discrimination.

On May 5, 1993, Ghyll informed Plaintiff–Appellant that he would receive an "unsatisfactory" evaluation for the 1992–93 school year. The Board of Education of the City of New York ("the Board") subsequently agreed to change the evaluation to "satisfactory" if Plaintiff–Appellant transferred to another school district. The record is unclear whether Plaintiff–Appellant ultimately received a "satisfactory" or "unsatisfactory" rating for that year. On June 8, 1993, Plaintiff–Appellant requested a release from his position on the close of business June 28, 1993, which the Board approved. On October 12, 1993, Plaintiff–Appellant was hired as a music teacher at P.S. 154, where he is currently employed. However, Plaintiff–Appellant alleges that the Board withheld his paychecks in September and October of 1993.

On February 3, 1994, Plaintiff–Appellant filed a complaint with the Equal Opportunity Employment Commission ("EEOC") and the New York State Division of Human Rights. The EEOC issued Plaintiff–Appellant a "Right To Sue" letter December 2, 1997, and Plaintiff–Appellant filed the instant suit March 10, 1998, alleging discrimination based upon race and gender and retaliation in violation of Title VII of the Civil Rights Act of 1964. The district court granted the Board's motion for summary judgment March 22, 2002, holding that: 1) Plaintiff–Appellant's claims prior to April 1993 were time-barred because they occurred more than 300 days prior to the time he filed his charge of discrimination with the EEOC; 2) Plaintiff–Appellant failed to allege a prima facie case of race and gender discrimination under Title VII; 3) Plaintiff–Appellant failed to allege a prima facie case of retaliation under Title VII; 4) the Board articulated legitimate, non-discriminatory reasons for its actions against Plaintiff–Appellant; and 5) Plaintiff–Appellant cannot show that the Board's reasons were pretextual.

On appeal, Plaintiff–Appellant does not challenge the district court's findings that many of his claims are time-barred and

that the continuing violation theory does not apply to this case. Accordingly, allegations of discrimination prior to April 9, 1993 are time-barred. Instead, Plaintiff–Appellant argues that he proffered sufficient evidence to establish prima facie cases of discrimination and retaliation and that he proffered sufficient evidence to show that the Board's motives were unlawful. Plaintiff–Appellant also argues that the district court should have sanctioned the Board for a variety of alleged discovery and litigation abuses.

■ Claims of discrimination are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must first establish a prima facie case by demonstrating that: 1) he is a member of a protected class; 2) his job performance was satisfactory; 3) he suffered an adverse employment action; and 4) the action occurred under conditions giving rise to an inference of discrimination. *Id.* at 802. The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action. *Id.* at 802–04. If the employer makes such a showing, the burden shifts back to the plaintiff to prove discrimination, and evidence that the employer's proffered reason is pretextual will frequently suffice. *Id.*

■ The district court correctly concluded that Plaintiff–Appellant failed to establish a prima facie case of discrimination, as he alleged no facts showing that he suffered an adverse employment action that was motivated by discrimination after April 9, 1993. There is no evidence that Ghyll's alleged threat to give Plaintiff–Appellant an "unsatisfactory" evaluation was based upon race or gender. While Plaintiff–Appellant alleges that Ghyll did not remove the disproportionate number of "problem" students from his class, stand-ing alone, this does not constitute an adverse employment action. *See, e.g., Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999) (holding that an adverse employment action is a "materially adverse change in the terms and conditions of employment").

■ Plaintiff–Appellant's timely claims focus upon the alleged retaliation he suffered in response to his grievances. In order to establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show that: 1) he engaged in a protected activity; 2) the employer was aware of this fact; 3) the employer subjected him to an adverse employment action; and 4) there is a causal connection between these events. *See, e.g., Raniola v. Bratton,* 243 F.3d 610, 624 (2d Cir.2001). Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its actions, after which the plaintiff must proffer evidence that the employer's actions were, in fact, motivated by discrimination. *Id.*

Plaintiff–Appellant alleges that after he filed his grievances, he was threatened with an "unsatisfactory" evaluation for the 1992–93 school year unless he transferred to another district. At the outset, it is unclear whether Plaintiff–Appellant actually received an "unsatisfactory" evaluation. Regardless, there is no evidence that Plaintiff–Appellant suffered a diminution in salary or benefits. While Plaintiff–Appellant focuses on the fact that he was "forced" to transfer, it is undisputed that the Board honored his prior request for a position at another school as a music teacher. These facts suggest that Plaintiff–Appellant did not suffer an adverse material change in the terms and conditions of his employment.

Even assuming the single evaluation constituted an adverse employment action, ▾

the Board proffers ample evidence that Plaintiff–Appellant deserved an "unsatisfactory" rating. The record is rife with examples of Plaintiff–Appellant's shortcomings, including several assaults on students, and Plaintiff–Appellant himself even agreed that he was "incompetent as a teacher." Plaintiff–Appellant does little to refute this evidence, and Ghyll's comment that Plaintiff–Appellant had an obligation to his African–American students is insufficient to create a triable issue. Moreover, the mere fact that Plaintiff–Appellee received fair and satisfactory ratings on individual classroom observations in December 1992 and January 1993, respectively, does not call into question the Board's explanation, given the volume of evidence in support of their evaluation.

■ Plaintiff–Appellant also argues that the Board withheld his paychecks in September and October of 1993. While this may constitute an adverse employment action, *see Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 224 (2d Cir.2001), Plaintiff–Appellant proffers no evidence of a causal connection between this allegation and his grievances of April 1993. The Board allegedly withheld Plaintiff–Appellant's paychecks beginning in September 1993, approximately five months after he filed his grievances. However, there is no evidence that the Board withheld any of Plaintiff–Appellant's salary prior to that time, undermining his argument that there is a causal connection between these incidents.

We have considered Plaintiff–Appellant's remaining arguments and find them to be without merit. Based upon the foregoing, the judgment of the United States District Court for the Eastern District of New York is **AFFIRMED.**