**Gary STAVIS, Plaintiff,**

v.

**GFK HOLDING, INC., Defendant.**

**No. 09 Civ. 5096(RJS).**

United States District Court, S.D. New York.

Jan. 28, 2011.

---

Derek Todd Smith, Akin & Smith, LLC, New York, NY, for Plaintiff.

Craig Robert Benson, Alex Ali Ayazi, Littler Mendelson, P.C., New York, NY, for Defendant.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Gun Stavis brings this diversity action against his former employer. GFK Holding, Inc., alleging discrimination and retaliation on the basis of his religion and age in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8–101 *et seq.* He also brings a cause of action for common law breach of contract. Before the Court is Defendant's motion for summary judgment on all of Plaintiffs claims. For the reasons stated below, Defendant's motion is granted in its entirety.

I. BACKGROUND

A. Facts[1]

Plaintiff is a Jewish man born in 1955. (Def.'s 56.1 ¶ 2.) Defendant is a market

---

1. The following facts are taken from the parties' Local Rule 56.1 statements and the affidavits and exhibits attached thereto. Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no admissible evidence to controvert that fact.

research firm with over 8,000 full-time employees. (*Id.* ¶ 1.)

In May 2008, Defendant posted a vacancy for the position of U.S. Tax Director to oversee all aspects of tax compliance. (*Id.* ¶ 3.) On May 27, 2008. Plaintiff submitted a resume and cover letter for the position to Charles Carrier, Defendant's Director of Recruitment. (*Id.* ¶ 8.) At that time, the Tax Director reported to the Vice President of Financial Reporting, Thomas Colicchio, and the Chief Financial Officer for North America, Norbert Kraus. (*Id.* ¶ 7.) Carrier forwarded Plaintiffs application to Colicchio, who then told Carrier to contact Plaintiff for a telephone interview. (*Id.* ¶¶ 10–12.)

After both Colicchio and Kraus conducted in-person interviews of Plaintiff, they decided to offer him the Tax Director position. (*Id.* ¶¶ 13, 16.) Thereafter, Carrier sent a letter to Plaintiff offering him the job at an annual salary of $145,000, plus a 20% discretionary bonus. (*Id.* ¶ 17; Declaration of A. Ali Ayazi, dated May 3, 2010 ("Ayazi Decl."), Ex. D (Deposition of Gary Stavis, dated October 21, 2009 ("Pl.'s Dep.")) at 35:10–16.) Plaintiff declined the offer, explaining that he "need[ed] to be made whole" for the fact that his current job paid $125,000 annually plus a $25,000 bonus. (Pl.'s Dep. at 35:25–36:2.) On June 24, 2008, Carrier sent Plaintiff a response letter increasing the offer to an annual salary of $150,000, plus a discretionary bonus with a "target" amount of 20% of his annual base salary. (Ayazi Decl., Ex. J.) Plaintiff signed the offer letter on June 26, 2008. (Def.'s 56.1 ¶ 22.)

In August 2008. Plaintiff suggested scheduling a "hard close"—meaning a full, year-end audit of Defendant's books—for September 30, 2008. (*Id.* ¶ 25.) At that time, Plaintiff also agreed to a flexible deadline of mid-October 2008 for an outside accounting firm, KPMG, to review the hard close prior to sending the results to Defendant's headquarters in Germany. (Pl.'s Dep. at 88:19–23.) Both Rosh Hashanah and Yom Kippur coincided with those deadlines. (*Id.* at 89; Def.'s 56.1 ¶ 26.)

On either September 28 or 29, 2008, Plaintiff alleges that he told Kraus that he "needed to take a couple days off" for the upcoming Jewish holidays.[2] (Pl.'s Dep. at 77:17–18.) Plaintiff alleges that Kraus responded, "[W]e are going through a hard close and if we don't get the filings done in Germany on time, heads are going to roll." [3] (*Id.* at 69:7–10.) Plaintiff then went to Colicchio and told him about his plans to take time off and also that his conversation with Kraus had left him feeling uneasy. (Def.'s 56.1 ¶ 29.) Plaintiff alleges that Colicchio responded. "[W]ell, you have to do what you have to do." (Pl.'s Dep. at 69:14–15.) Colicchio recalled his reaction being: "[O]f course, kind of goes without saying." (Ayazi Deck. Ex. I (Deposition of Thomas Colicchio, dated November 13, 2009 ("Colicchio Dep.") at 129).)

Plaintiff stayed at home on September 30 to observe Rosh Hashanah and on October 9 to observe Yom Kippur, (Def.'s 56.1 ¶ 30.)

In February 2009. Plaintiff alleges that he had a conversation with Colicchio in which he mentioned that he was born in 1955 and that, upon hearing this information, Colicchio "looked shocked. His eyes rolled around in his face and he was taken

---

**2.** Kraus recollects Plaintiff saying that he may have difficulty meeting the deadline for the hard close. (Ayazi Decl., Ex. E (Deposition of Norbert Kraus, dated October 29, 2009 ("Kraus Dep.") at 91–92:17–24).) Plaintiff denies making that statement. (Pl.'s 56.1 Opp'n ¶ 28.)

**3.** Kraus denies making such a statement. (Kraus Dep. at 84:12–18.)

aback." [4] (Pl.'s Dep. at 55:14–15.) Plaintiff claims that, after this conversation, he noticed "a continuing decline in [his] working relationship" with Colicchio. (*Id.* at 55:15–17.) Specifically, Plaintiff alleges that Colicchio failed to inform him of certain "critical" information that was necessary to do his job. (*Id.* at 58:24.)

On April 9, 2009, Colicchio sent separate emails to Plaintiff and another employee, Christine McCartney, regarding their bonuses for 2008. (Def.'s 56.1 ¶ 31.) The email to Plaintiff informed him that he would receive a bonus of $5,000 on the next day and also said that bonuses were "not great across the board." (*Id.;* Ayazi Decl., Ex. M.) Plaintiff received and opened this email when he was at home celebrating Passover Seder. (Def.'s 56.1 ¶ 33.)

After reading the email and discovering that his bonus would not be the 20% nondiscretionary bonus that he expected, Plaintiff immediately telephoned Colicchio to complain. (*Id.* ¶ 34.) He told Colicchio that he was entitled to a nondiscretionary bonus equal to 20% of his salary and that Defendant would be better off "just giv[ing] him the bonus he was expecting." (*Id.*)

On the next day, Plaintiff sent an email to Kraus expressing his dissatisfaction with his bonus. (*Id.* ¶ 35.) Plaintiff wrote in the email that the bonus was inadequate and that he was entitled to a nondiscretionary bonus of at least $25,000 as a result of promises made by Carrier when he was hired. (Ayazi Deck, Ex. O.) He wrote, "[w]hile there is still much to do [in the Tax Department], it is difficult to approach my situation in the same light now that this 'bonus' was offered to me." (*Id.*)

Kraus forwarded Plaintiffs email to Colicchio. (Def.'s 56.1 ¶ 37.)

Paul Fiolek, Defendant's Vice President of Human Resources, then met with Plaintiff to discuss his 2008 bonus and the email he sent to Colicchio. (*Id.* ¶ 40.) Fiolek informed Plaintiff that his bonus was discretionary. (*Id.* ¶ 41.) On April 20, 2009. in the presence of Colicchio, Fiolek terminated Plaintiffs employment. (*Id.* ¶ 44.)

### B. Procedural History

Plaintiff initiated this action by filing a complaint on June 1, 2009. Plaintiff subsequently tiled an amended complaint on July 8, 2009. On May 3, 2010, Defendant filed its motion for summary judgment on Plaintiffs employment discrimination and retaliation claims, hostile work environment claims, and breach of contract claim.[5] Plaintiff filed his opposition papers on June 14, 2010, and the motion became fully submitted on July 7, 2010.

### II. DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W.*

---

4. Colicchio claims he does not recall having this conversation with Plaintiff or ever feeling surprised or shocked about Plaintiff's age. (Colicchio Dep. at 124.)

5. Plaintiff consents to the dismissal of his hostile work environment claims. (Pl.'s Opp'n at 1.) Accordingly, those claims are dismissed.

*Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *accord Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007) (internal quotation marks omitted) (alteration in original).

"[B]ecause direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in "cases involving allegations of employment discrimination." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 603 (2d Cir.2006). However, even in an employment discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008). The ultimate test remains "whether the evidence can reasonably support a verdict in plaintiffs favor." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir.2000).

### A. Religious Discrimination

Plaintiff asserts claims of religious discrimination, arising under both the NYSHRL and the NYCHRL, for Defendant's (1) failure to accommodate Plaintiffs religious beliefs and (2) termination of his employment as a result of his request for accommodation of his religious beliefs. (Pl.'s Opp'n at 8.)

### I. Legal Standard

■ Employment discrimination claims brought pursuant to the NYSHRL and the NYCHRL are analyzed using the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See*

*Blanc v. Sagem Morpo, Inc.,* 394 Fed. Appx. 808, 809 (2d Cir.2010).

■ The initial step of this familiar framework requires plaintiffs to establish a prima facie case of religious discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To do so. they "must show that (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot,* 445 F.3d 541, 546 (2d Cir.2006) (internal quotation marks omitted).

If a plaintiff meets this threshold of proof, then he creates a rebuttable presumption that the employer discriminated against him. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. The burden then shifts to the employer to rebut that presumption by "articulat[ing] some legitimate, nondiscriminatory reason for the [disciplinary action]." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. At this stage, the employers' burden is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Finally, if the employer meets its burden of production at step two, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). To create a material issue of fact and defeat a motion for summary judgment, a plaintiff at this stage must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscrimina-

tory reasons proffered by the [defendant] were false, and that more likely than not [the discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted) (alterations in original).

### 2. Analysis

Although the parties agree that Plaintiff holds a bona fide religious belief and that he informed Defendant of that belief, they dispute (1) whether any employment requirement actually conflicted with Plaintiff's belief and (2) whether Plaintiff was disciplined for failing to comply with a conflicting employment requirement. (*See* Def.'s Opp'n at 12–15.) The Court finds that, even if Plaintiff's religious belief conflicted with an employment requirement, there is no evidence in the record establishing that Plaintiff was disciplined for failing to comply with a conflicting employment requirement.

■ Plaintiff argues that his termination on April 20, 2009 was a disciplinary action he suffered in consequence of staying at home from work to observe Yom Kippur and Rosh Hashanah. (*See* Pl.'s Opp'n at 8.) That theory, however, is wholly unsupported by any evidence, Yom Kippur and Rosh Hashanah occurred more than six months prior to Plaintiff's termination. (*See* Pl.'s Ex. 5, at 3.) The lapse of six months, absent any other evidence, strongly suggests that Plaintiff's termination was not a result of his decision not to work on Yom Kippur and Rosh Hashanah.[6] *See, e.g., Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84–85 (2d Cir.1990) (holding that plaintiff failed to establish

causation where three and one-half months passed between the protected activity and the adverse employment action); *see also Chamberlin v. Principi*, 247 Fed.Appx. 251, 254 (2d Cir.2007) (holding that the district court "properly concluded" that a five-month interval between the protected activity and the adverse action was not close enough to meet the prima facie standard for causal connection); *Jenkins v. Bd. of Educ.*, 64 Fed.Appx. 801, 805 (2d Cir.2003) (same). Additionally, Plaintiff "concedes that [he] was never denied a religious holiday" and "was never told that [he] could not take a religious day off." *Jenkins v. N.Y. State Banking Dep't*, Nos. 07 Civ. 6322(JGK) & 07 Civ. 11317(JGK), 2010 WL 2382417, at *9 (S.D.N.Y. June 14, 2010). In short, there is no evidence connecting Plaintiff's conversations with Colicchio and Kraus at the end of September 2008 with his termination on April 20, 2009.[7]

Thus, because Plaintiff's allegations of religious discrimination are purely conclusory and speculative, he cannot establish a prima facie case of religious discrimination. *See Holcomb*, 521 F.3d at 137.

■ Even if Plaintiff could establish a prima facie case of religious discrimination, Defendant has certainly articulated a legitimate, nondiscriminatory reason for terminating Plaintiff. Shortly before Plaintiff's termination, Plaintiff emailed Kraus that, "[w]hile there is still much to do [in the Tax Department], it is difficult to approach my situation in the same light now that this 'bonus' was offered to me." (Ayazi Deck, fix. O.) Defendant has explained

---

**6.** It is worth noting that Plaintiff does not claim that his termination was discipline for his decision to lake time off for the Passover holiday. (Pl.'s Opp'n at 8–9.)

**7.** The Court notes that Plaintiff also received his bonus approximately six months after observing Yom Kippur and Rosh Hashanah. Therefore, even if the Court agreed with Plaintiff that he received a reduced bonus as a disciplinary action, Plaintiff still fails to put forth evidence of a causal link between his reduced bonus and celebrating the Jewish holidays.

that its managers interpreted his email as a veiled threat of poor performance. (Def.'s 56.1 ¶¶ 37–38.) Thus, the evidence of Plaintiffs reaction to his bonus is surely enough to satisfy the second step of the *McDonnell Douglas* framework. *See Cooper v. State of Conn. Pub. Defenders Office*, 280 Fed.Appx. 24, 25 (2d Cir.2008) (explaining that, at step two, the defendant "need not persuade the court that it was actually motivated by the proffered reasons," just that "defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff") (internal quotation marks and citations omitted).

At step three, in order to create a material issue of fact and defeat a motion for summary judgment, a plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered . . . were false, and that more likely than not [discrimination] was the real reason" for the termination. *Weinstock*, 224 F.3d at 42 (internal quotation marks omitted) (alterations in original). As noted above, Plaintiff has failed to produce evidence sufficient to satisfy the minimal threshold required to establish a prima facie case. Clearly, he has offered insufficient evidence to support a rational finding that Defendant's proffered reason for terminating Plaintiff is false.

Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's causes of action for religious discrimination under the NYSHRL and the NYCHRL.[8]

### B. Age Discrimination

Plaintiff alleges that Defendant discriminated against him on the basis of his age in violation of the NYSHRL and the NYCHRL. Like religious discrimination claims, age discrimination claims arising under both statutes are analyzed using the three-step. burden-shifting framework established by the Supreme Court in *McDonnell Douglas*. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n. 1 (2d Cir.2009).

■ In order to establish a prima facie case of age discrimination, a plaintiff must show "(1) that she was within the protected age group. (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of employment discrimination." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.2010).

Defendant concedes that Plaintiff was within the protected age group and that he was qualified for the position of U.S. Tax Director. (Def.'s Br. at 10.) Additionally, there is no dispute that an employee's termination is an adverse employment action. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998). Plaintiff cannot. however, establish the framework's fourth prong—that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Gorzynski*, 596 F.3d at 107.

In order to satisfy the framework's fourth prong, a plaintiff can put forth mul-

---

8. Although the *McDonnell Douglas* framework applies to cases alleging employment discrimination under the NYCHRL, courts must construe NYCHRL discrimination claims "independently from and more liberally than" their state analogues. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir.2009) (internal quotation marks omit-

ted). Given the lack of evidence supporting either (1) that Plaintiff was terminated for failing to comply with a conflicting employment requirement or (2) that Defendant's proffered reason for terminating Plaintiff was pretextual, Plaintiff's NYCHRL religious discrimination claim fares no better than his claim arising under the NYSHRL.

tiple kinds of evidence. *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597(DLC), 2010 WL 4513298, at *8 (S.D.N.Y. Nov. 10, 2010), including establishing "an inference of discriminatory intent . . . from a variety of circumstances." *Leibowitz*, 584 F.3d at 502. These circumstances can include, but are not limited to, "the employer's criticism of the plaintiff's performance in . . . terms [degrading his age]; or its invidious comments about others in the employee's protected group; . . . or the sequence of events leading to the plaintiff's discharge." *Id.* (citation omitted). "[B]ecause 'smoking gun' evidence of discriminatory intent is rare, a court must carefully review the record to search for any kind of evidence that would support an inference of intentional discrimination." *Joseph*, 2010 WL 4513298, at *8 (citing *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005)).

■ After a careful review of the record, the Court finds nothing that supports an inference of age discrimination. As an initial matter, Plaintiff admits that none of Defendant's employees ever commented on Plaintiffs age and does not argue that younger employees were treated more favorably. (Pl.'s Dep. at 52:22–25, 55:6–17, 68:14–18.) Instead. Plaintiff seems to argue for an inference of discrimination based upon "the sequence of events leading to his discharge." *Leibowitz*, 584 F.3d at 502. Specifically, Plaintiff maintains that "immediately after Colicchio found out that Plaintiff was born in 1955. [Colicchio] gave Plaintiff 'a look of shock' and their working relationship declined From that point forward." (Pl.'s Opp'n at 6 (citing Pl.'s Dep. at 55–57).) Specifically, Plaintiff testified that, after the look of shock,[9] he was "kept out of the loop" and was not

given information critical to the successful performance of his job. (*Id.*)

As with Plaintiff's assertions of religious discrimination, these allegations are merely conclusory and speculative and thus cannot support an inference of age discrimination. *See Heuser v. Metro. Transit Auth.*, No. 98–7810, 1999 WL 220144, at *1 (2d Cir. Apr. 13, 1999) ("The plaintiff's burden to establish a prima facie case of age discrimination is minimal, but speculative, conclusory allegations will not suffice to withstand a motion for summary judgement."). Here, Plaintiff provides no evidence of his being left out of the loop after he allegedly received the look of shock. *See Nieves v. Angelo, Gordon, & Co.*, 341 Fed.Appx. 676, 678 (2d Cir.2009) ("A plaintiff cannot defeat a motion for summary judgment based on purely conclusory allegations of discrimination *absent concrete particulars.*") (internal quotation marks omitted) (emphasis added). Moreover, Plaintiff puts forth no evidence that, even if he was left out of the loop, it was on account of his age. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir.1999) (holding that Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination") (internal quotation marks and alterations omitted); *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1439 (2d Cir.1995) (explaining that a "vaporous account [of discrimination] does not support the weight placed on it by the district court" because a person's "sense of being discriminated against is not evidence") (internal quotation marks omitted).

Even if Plaintiff could establish a prima facie ease of age discrimination, his age discrimination claims would still fail. As explained above, Defendant has proffered a plausible and legitimate non-discriminatory reason for terminating Plaintiff.

---

9. The Court adopts the parties' phraseology when using the descriptor "the look of

shock." (*See, e.g.*, Pl.'s Opp'n at 6; Def.'s Br. at 10.)

Namely. Defendant explained that it interpreted Plaintiff's April 10, 2009 email as a veiled threat of future poor performance. (Def.'s 56.1 ¶¶ 37–38.) Plaintiff has offered no evidence rebutting Defendant's stated reason for terminating Plaintiff.

Accordingly, the Court grants summary judgment to Defendant on Plaintiff's causes of action for age discrimination under both the NYSHRL and the NYCHRL.[10]

### C. Unlawful Retaliation

Plaintiff alleges that Defendant unlawfully retaliated against him, in violation of the NYSHRL and NYCHRL, for complaining to Colicchio in late August 2008 regarding his conversation with Kraus about the Jewish holidays. Retaliation claims arising under the NYSHRL and the NYCHRL are also analyzed using the *McDonnell Douglas* framework. *See Jimenez v. City of New York*, 605 F.Supp.2d 485, 528 (S.D.N.Y.2009).

■ To establish a prima facie case of unlawful retaliation under the NYSHRL, "a plaintiff must prove that: (1) he participated in a legally protected activity: (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action." *Bowles v. N.Y.C. Transit Authority*, 285 Fed.Appx. 812, 814 (2d Cir.2008). "The elements of retaliation under the NYCHRL differ only in that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'" *Gutierrez v. City of New York*, No. 08 Civ.

6537(LBS), 756 F.Supp.2d 491, 509 n. 12, 2010 WL 4823644, at *11 n. 12 (S.D.N.Y. Nov. 29, 2010) (quoting *Jimenez*, 605 F.Supp.2d at 528).

■ Plaintiff fails to meet his burden to establish a prima facie case of retaliation under either the NYSHRL or the NYCHRL. As already explained above, the passage of six months between the protected activity and the adverse employment action prevents Plaintiff from meeting his burden with respect to the prima facie analysis's fourth prong—the causal connection between the protected activity and the adverse employment action. *See, e.g., Chamberlin*, 247 Fed.Appx. at 254; *Jenkins*, 64 Fed.Appx. at 805; *Hollander*, 895 F.2d at 84–85.

Additionally, even if Plaintiff could establish a prima facie case, he could not meet his burden at the third step of the *McDonnell Douglas* framework for the reasons previously articulated.

Accordingly, the Court grants summary judgment to Defendant on Plaintiff's retaliation claims under the NYSHRL and the NYCHRL.

### D. Breach of Contract

■ Finally, Plaintiff alleges that Defendant breached its employment contract with him by paying him a $5,000 bonus, rather than a $25,000 bonus, for 2008. (Pl.'s Opp'n at 12.) Plaintiff maintains that, before he signed the June 24, 2008 offer letter. Carrier orally promised him a nondiscretionary, $25,000 bonus for 2008. (Pl.'s Dep. at 45.)

Plaintiffs June 24, 2008 offer letter. however, clearly provided that "[b]onuses are

---

**10.** Again, the Court recognizes that after *Loeffler*, 582 F.3d at 278, it is easier for Plaintiff to prevail on his NYCHRL age discrimination claim than his parallel NYSHRL claim. Nevertheless, Plaintiff cannot even meet this easier standard because he presents no evidence (1) establishing a causal connection between his allegations of age discrimination and his termination and (2) rebutting Defendant's legitimate, non-discriminatory reason for terminating him.

**340**

discretionary and based on the overall performance of the company." (Ayazi Decl., Ex. J.) New York law is clear that, when the terms of an offer letter are unambiguous, a court should not rely on parol evidence in construing an employment agreement. *See Allen v. J.P. Morgan Chase & Co.,* No. 06 Civ. 8712(JGK), 2009 WL 857555, at *15 (S.D.N.Y. Mar. 31, 2009) (dismissing the plaintiff's breach of contract claim because the "offer letter clearly states that bonus awards are discretionary"); *Seligman v. Simon & Schuster, Inc.,* 6 A.D.3d 324, 775 N.Y.S.2d 515, 515 (1st Dep't 2004) ("Given the clear, unambiguous . . . employment agreement and severance letter . . ., we reject plaintiff's contention that resort should be had to extrinsic evidence."); *cf. Kaplan v. Capital Co. of Am., LLC,* 298 A.D.2d 110, 747 N.Y.S.2d 504, 505–06 (1st Dep't 2002) (holding that Plaintiff did not have a breach of contract claim based upon an alleged oral promise of a bonus amount because the company's handbook unambiguously stated that bonuses were discretionary). Because the terms of Plaintiffs offer letter, which Plaintiff himself signed on June 26, 2008, were unambiguous, the Court does not consider Carrier's alleged conversation with Plaintiff in interpreting or eliciting the offer letter's terms.

Accordingly, the Court grants summary judgment to Defendant on Plaintiff's breach of contract claim.

### III. CONCLUSION

For the foregoing reasons, the Court grants summary judgment to Defendant on all of Plaintiff's claims.

SO ORDERED.